```
UNITED STATES DISTRICT COURT            USDC SDNY
SOUTHERN DISTRICT OF NEW YORK           DOCUMENT
------------------------------------X   ELECTRONICALLY FILED
                                    :   DOC #: _____
AVNER MALOUL and ALLEN LOWY,        :   DATE FILED: July 13, 2017
                                    :
                       Plaintiffs,  :   15 Civ. 8710 (KPF)
                                    :
              v.                    :   OPINION AND ORDER
                                    :
NEW COLOMBIA RESOURCES, INC.,       :
                                    :
                       Defendant.   :
                                    :
------------------------------------X
```

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Avner Maloul and Allen Lowy[1] bring this case to recover from Defendant New Colombia Resources, Inc. certain funds Plaintiffs allege they are owed pursuant to five loans they extended to Defendant in 2003, 2004, and 2005. In short, Plaintiffs want their money back, with interest.

Defendant argues that Plaintiffs' claims are time-barred under the six-year statute of limitations applicable to breach-of-contract claims under New York's Civil Practice Law and Rules, Section 213(2). The parties cross-moved for judgment on the pleadings. Because the parties submitted documentary evidence in support of their motions, the Court converted both motions into

---

[1]  Plaintiff Lowy is representing himself *pro se* and Plaintiff Maloul as Maloul's counsel. Normally, the Court is obligated to construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest. *McNaughton* v. *de Blasio*, No. 14 Civ. 221 (KPF), 2015 WL 468890, at *4 (S.D.N.Y. Feb. 4, 2015) (citing *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000), *aff'd*, 644 F. App'x 32 (2d Cir. 2016) (summary order)). However, because Plaintiff is an attorney, he is "not entitled to liberal construction of his pleadings." *Id.* (citing *Tracy* v. *Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010); *Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (noting that *pro se* attorneys typically cannot claim the special consideration extended to other *pro se* parties)).

Rule 56 motions for summary judgment. For the reasons that follow, Defendant's motion is denied and Plaintiffs' motion is denied.

## BACKGROUND[2]

### A. Factual Background

Defendant's alleged liability in this case stems from the following five transactions: First, "[i]n or about November 2003, Lowy loaned $250,000 to [D]efendant in exchange for a Promissory Note[,] … which matured on November 9, 2004." (Compl. ¶¶ 8-9). Originally, this Note "carried an interest computed from the date of the Note at the rate of twelve (12%) per annum." (*Id.* at ¶ 9). However, "[u]pon maturity … , the Note would begin to accrue a default interest at a rate of eighteen (18%) per annum … until the obligation [was] paid in full." (*Id.* at ¶ 10).

Second, "[i]n or about October 2004, Lowy loaned an additional $50,000 to [D]efendant, in exchange for a second Promissory Note" (Compl. ¶ 12), which like the first "carried an interest computed from the date of the Note at the rate

---

[2] This Opinion draws on facts from Plaintiffs' Complaint ("Compl." (Dkt. #1)) and Defendant's Answer (Dkt. #16). The Court has also reviewed the briefing submitted by the parties and will refer to it as follows: Plaintiffs' memorandum of law in support of Plaintiffs' motion for judgment on the pleadings will be referred to as "Pl. Br." (Dkt. #29-1); Defendant's memorandum of law in support of Defendant's motion for judgment on the pleadings as "Def. Br." (Dkt. #31); Defendant's memorandum of law in opposition to Plaintiffs' motion as "Def. Opp." (Dkt. #35); Plaintiffs' memorandum of law in opposition to Defendant's motion as "Pl. Opp." (Dkt. #36); and Plaintiffs' reply memorandum of law as "Pl. Reply" (Dkt. #37).

The exhibits attached to the parties' briefing will be referred to by their letter designation: "Pl. Br., Ex. [ ]" and "Def. Br., Ex. [ ]." The Affidavit of Kyle Gotshalk, Defendant's President and CEO from 2007 to 2012, which was attached originally as an exhibit to Defendant's Motion to Vacate the Clerk's Certificate of Default, will be referred to as "Gotshalk Aff." (Dkt. #14-1; *see also* Pl. Br., Ex. G (Dkt. #29-6)), and the affirmation of Plaintiff Lowy in support of Plaintiffs' motion for judgment on the pleadings as "Lowy Aff." (Dkt. #29-2).

2

of twelve (12%) percent per annum" (*id.* at ¶ 13). This Note also "[u]pon maturity," was to "begin to accrue a default interest at a rate of eighteen (18%) per annum ... until the obligation [was] paid in full." (*Id.* at ¶ 14).

Lowy made a third loan of $40,000 to Defendant "[i]n or about April 2005." (Compl. ¶ 16). This loan was "in the form of a Debenture" (*id.*), and "carried an interest computed from the date of the Debenture at the rate of twelve (12%) per annum" (*id.* at ¶ 17).

Maloul's two loans to Defendant are the fourth and fifth transactions at issue. "In or about October 2004, Maloul loaned an additional $65,000 to [D]efendant in exchange for a Promissory Note." (Compl. ¶ 18). As was the case with Lowy's loans, this Note, "[u]pon maturity," was to "accrue a default interest at a rate of eighteen (18%) per annum ... until the obligation [was] paid in full." (*Id.* at ¶ 19). And "[i]n or about April 2005, Maloul loaned an additional $100,000 to [D]efendant in the form of a Debenture." (*Id.* at ¶ 21). This "Debenture carried an interest computed from the date of the Debenture at the rate of twelve (12%) percent per annum." (*Id.* at ¶ 22).

The parties agree that each of these loans matured within approximately one year of its extension, and that not one was repaid. (*See* Dkt. #17; *see also* Compl. ¶ 1 ("Although the maturity dates and obligations to pay back the loans have passed, and despite [P]laintiffs' demand for repayment of their loans, [D]efendant has failed to return any of the monies it owes to [P]laintiffs.")).[3]

---

[3] The Complaint and the contract documents provided as exhibits to the parties' motions identify definite term expiration dates for only four of Plaintiffs' five loans. However, the parties have repeatedly agreed that all five loans were for a term of approximately one

3

**B.     Procedural Background**

Plaintiffs filed the Complaint on November 5, 2015. (Dkt. #1). Though personal service was made on December 7, 2015 (Dkt. #7), Defendant failed to appear or respond to the Complaint. Therefore, a Clerk's Certificate of Default was issued on February 19, 2016. (Dkt. #8).

Because Plaintiffs took no subsequent action, the Court issued an Order on April 14, 2016, directing Plaintiffs to file within 30 days either a motion for default judgment or a request to dismiss this case. (Dkt. #9). Plaintiffs moved this Court to enter a default judgment, and on May 16, 2016, the Court issued an Order directing Defendant to show cause why default judgment should not be entered against it pursuant to Federal Rule of Civil Procedure 55(b)(2). (Dkt. #11). On June 16, 2016, Defendant filed a motion that the Court construed as Defendant's opposition to the Court's May 16, 2016 Order. (Dkt. #14; *see also* Dkt. #17).

On June 30, 2016, the Court held a hearing at which it discussed the possibility of a default judgment. (*See* Dkt. #17). Ultimately, the Court determined that the entry of default judgment was not necessary under the circumstances, which would be better addressed by lesser sanctions. (*Id.*). These the Court imposed, barring Defendant from contesting the Court's personal jurisdiction and the adequacy of service. (*Id.* (precluding Defendant from contesting personal jurisdiction or adequacy of service, in part because

---

year. (*See, e.g.,* Dkt. #17 (Plaintiffs agreeing notes were of one year's maturation)). This fact is not in dispute.

Defendant represented it had "no problem consenting to jurisdiction, no problem waiving personal jurisdiction").

On July 21, 2016, Defendant filed its Answer, in which it raised several affirmative defenses. (Dkt. #16). Plaintiffs filed their motion for judgment on the pleadings on September 22, 2016. (Dkt. #29). Defendant filed its cross-motion for judgment on the pleadings on September 26, 2016. (Dkt. #31). On October 27, 2016, Defendant filed its opposition to Plaintiffs' motion. (Dkt. #35). Plaintiffs filed their opposition to Defendant's motion on October 31, 2016 (Dkt. #36), and their reply in further support of their motion on November 7, 2016 (Dkt. #37). Defendant did not file a reply.

Along with their briefing, Plaintiffs filed an affirmation of Plaintiff Allen Lowy, who is also Maloul's counsel, in support of Plaintiffs' motion for judgment on the pleadings (Dkt. #29-2), as well as several documents attached as exhibits (Dkt. #29-3 to 29-7). Defendant likewise attached contract documents as an exhibit to its motion. (Dkt. #31-1).

Accordingly, on June 19, 2017, the Court issued an Order (the "June 19 Order") indicating that it planned to convert the parties' cross-motions for judgment on the pleadings into Rule 56 motions for summary judgment. (Dkt. #39).[4] The June 19 Order directed the parties to (i) show cause, in writing,

---

[4] Several of the documents attached as exhibits to the parties' motions were arguably subject to judicial notice, and therefore permissible for the Court to consider on a motion for judgment on the pleadings. But a court cannot take judicial notice of "the truth of the matters asserted" in a document appropriate for judicial notice. *Beauvoir* v. *Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (internal quotation mark omitted) (quoting *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). Here, that restriction would have impeded the Court's ability to resolve the timeliness argument Defendant raised in its Answer and cross-motion for judgment on the pleadings. Converting the parties'

5

why the Court could not consider the parties' documentary evidence submitted in support of their cross-motions for judgment on the pleadings in "adjudicating the parties' motions for summary judgment"; and (ii) "submit ... <u>any and all</u> additional materials they wish[ed] the Court to consider" in deciding the motions. (*Id.*). Specifically, the Court asked "the parties to ensure that the Court ha[d] <u>all</u> documentation relevant to Plaintiffs' proof of the existence of the disputed loans and their duration, Defendant's proof of the loan's assignment, and Plaintiffs' arguments for equitable tolling or estoppel." (*Id.*). Neither Plaintiffs nor Defendant submitted any response to the June 19 Order.

**DISCUSSION**

**A.     Applicable Law**

    **1.     Rule 56 Motions for Summary Judgment**

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, "[a] motion for summary judgment may properly be granted ... only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Rogoz* v. *City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Kaytor* v. *Elec. Boat Corp.*, 609 F.3d

---

motions into motions for summary judgment allowed the Court to consider documents that address that dispositive question.

537, 545 (2d Cir. 2010)).  And where, as here, "parties file cross-motions for summary judgment, … each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (alterations omitted) (internal quotation marks omitted) (quoting *Morales* v. *Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

"The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Rogoz*, 796 F.3d at 245 (quoting *Kaytor*, 609 F.3d at 545).  And "'[i]n determining whether summary judgment is appropriate,' a court must 'construe the facts in the light most favorable to the non-moving party and … resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Kuhbier* v. *McCartney, Verrino & Rosenberry Vested Producer Plan*, — F. Supp. 3d —, No. 14 Civ. 888 (KMK), 2017 WL 933126, at *7 (S.D.N.Y. Mar. 8, 2017) (omission in original) (quoting *Brod* v. *Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)).

A party moving for summary judgment "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'"  *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986)).  "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Royal*

*Crown Day Care LLC* v. *Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). And "[a] dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Negrete* v. *Citibank, N.A.*, — F. Supp. 3d —, No. 15 Civ. 7250 (RWS), 2017 WL 758516, at *6 (S.D.N.Y. Feb. 27, 2017) (quoting *Liberty Lobby*, 477 U.S. at 248).

If a summary-judgment movant satisfies his initial burden, then "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted). "To defeat summary judgment ... non-moving parties must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation." *Bermudez* v. *City of N.Y.*, 790 F.3d 368, 373-74 (2d Cir. 2015) (internal quotation marks omitted) (omission in original) (quoting *Jeffreys* v. *City of N.Y.,* 426 F.3d 549, 554 (2d Cir. 2005)). Put another way: "At the summary judgment stage, a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys*, 426 F.3d at 554 (quoting *D'Amico* v. *City of N.Y.,* 132 F.3d 145, 149 (2d Cir. 1998)).

### 2. Timeliness Under New York Law[5]

---

[5] The parties do not dispute that New York law applies in this case. Indeed, the parties seem to agree on its application, as both make arguments based on New York's contract laws and policies. (*See, e.g.*, Pl. Br. 4; Def. Br. 2 & n.5). Therefore, the Court will apply New York law, which is also the law selected for in the parties' loan documents. (*See* Pl. Br.*,* Ex. A).

8

Two issues are implicated by the parties' cross-motions: (i) The Court must determine when Plaintiffs' breach-of-contract claims accrued and the concomitant statute of limitations expired. (ii) The Court must also determine whether any untimely claims may nonetheless be saved by any exception to New York's typical timeliness rules. The Court will describe the law relevant to each of these determinations in turn.

   a.   **Statute of Limitations**

"Under New York law, a claim for breach of contract must be filed within six years of when the claim accrues." *Muto* v. *CBS Corp.*, 668 F.3d 53, 57 (2d Cir. 2012) (citing N.Y. C.P.L.R. § 213(2)). Generally, a claim accrues "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court." *Hahn Auto. Warehouse, Inc.* v. *Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 770 (2012) (internal quotation marks omitted) (quoting *Aetna Life & Cas. Co.* v. *Nelson*, 67 N.Y.2d 169, 175 (1986)). Therefore, a claim for breach of contract "ordinarily accrues … upon breach," even if the claimant does not become "aware of the breach or wrong" until some point after its occurrence. *Guilbert* v. *Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). Indeed, a "consistent line of Appellate Division precedent holds that, where 'the claim is for payment of a sum of money allegedly owed pursuant to a contract, the cause of action accrues when the [party making the claim] possesses a legal right to demand payment,'" regardless of when or whether any demand actually is made. *Hahn Auto. Warehouse*, 18 N.Y.3d at 770-71

9

(alteration in original) (collecting cases and quoting *Minskoff Grant Realty & Mgmt. Corp.* v. *211 Manager Corp.*, 897 N.Y.S.2d 485, 487 (2d Dep't 2010)).

One exception to this rule is made for claims premised on a "continuing wrong." New York law allows that where "a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." *Guilbert*, 480 F.3d at 150 (collecting cases). However, the "continuing wrong" exception is narrow. The doctrine distinguishes between "a single wrong that has continuing effects and a series of independent, distinct wrongs," and allows an exception to New York's usual accrual rules only in the latter case. *Henry* v. *Bank of Am.*, 48 N.Y.S.3d 67, 70 (1st Dep't 2017) (internal quotation mark omitted) (quoting *Doukas* v. *Ballard*, 972 N.Y.S.2d 143 (Sup. Ct. 2013) (table), *aff'd*, 24 N.Y.S.3d 174 (2d Dep't 2016)). Thus, "where a plaintiff asserts a single breach — with damages increasing as the breach continued — the continuing wrong theory does not apply." *Id.*; *see also Kahn* v. *Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1039 (2d Cir. 1992) (explaining that plaintiffs could not use continuing wrong theory for "ongoing" violation, because "performance under the contract merely affects damages and does not give rise to a new cause of action"); *Comm Trade USA, Inc.* v. *INTL FCStone, Inc.*, No. 13 Civ. 3998 (KBF), 2014 WL 787912, at *9 (S.D.N.Y. Feb. 27, 2014) ("To the extent that plaintiff asserts simply an ongoing breach of the contract — with damages increasing as the breach continued — the continuing wrong theory does not apply."). The continuing wrong doctrine

only "extend[s] the statute of limitations when [a] contract imposes a continuing duty" that is repeatedly breached. *Henry*, 48 N.Y.S.3d at 70.

### b. Equitable Tolling

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Abbas* v. *Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe* v. *Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 568 (3d Dep't 2005)).[6] "Such fraud, misrepresentations, or deception must be affirmative and specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for potential claims is not enough, nor are broad misstatements to the community at large." *Twersky* v. *Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (summary order).

Indeed, "[e]quitable estoppel is an 'extraordinary remedy.'" *Twersky*, 993 F. Supp. 2d at 442 (quoting *Pulver* v. *Dougherty*, 871 N.Y.S.2d 495, 496 (3d Dep't 2009)). New York law provides that the doctrine should be "invoked sparingly and only [in] exceptional circumstances," *id.* (internal quotation marks omitted) (quoting *Abercrombie* v. *Andrew Coll.*, 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006), namely "where it would be unjust to allow a defendant to

---

[6] The Court does not distinguish between equitable tolling and equitable estoppel here because "New York law does not distinguish between the doctrines and applies the same analysis" if either doctrine is implicated. *Corp. Trade, Inc.* v. *Golf Channel*, 563 F. App'x 841, 841-42 (2d Cir. 2014) (summary order) (citing *Abbas* v. *Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)).

11

assert a statute of limitations defense," *id.* (internal quotation mark omitted) (quoting *Zumpano* v. *Quinn*, 6 N.Y.3d 666, 673 (2006)).

"'Due diligence on the part of the plaintiff in bringing [an] action,' however, is an essential element of equitable relief." *Abbas*, 480 F.3d at 642 (alteration in original) (quoting *Holy See*, 793 N.Y.S.2d at 569). It is a plaintiff's burden to allege that an "action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim 'have ceased to be operational.'" *Id.* (quoting *Holy See*, 793 N.Y.S.2d at 569). If a plaintiff fails to identify acts by defendants that prevented his timely commencement of suit, then the plaintiff fails "to meet [his] burden of showing that [he was] wrongfully induced by defendants not to commence suit." *Id.* (alterations in original) (quoting *Holy See*, 793 N.Y.S.2d at 569).

### c. Laches

A cousin of equitable estoppel is the affirmative defense of laches.

> Under New York law, "[l]aches is defined as such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. The essential element of this equitable defense is delay prejudicial to the opposing party[.]"

*Zaretsky* v. *William Goldberg Diamond Corp.*, 820 F.3d 513, 526 (2d Cir. 2016) (alterations in original) (quoting *Capruso* v. *Vill. of Kings Point*, 23 N.Y.3d 631, 641 (2014)). In other words, "[l]aches 'bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'" *Cohen Lans LLP* v. *Naseman*, No. 14 Civ. 4045

(JPO), 2017 WL 477775, at *8 (S.D.N.Y. Feb. 3, 2017) (quoting *Ivani Contracting Corp.* v. *City of N.Y.,* 103 F.3d 257, 259 (2d Cir. 1997)), *reconsideration denied,* No. 14 Civ. 4045 (JPO), 2017 WL 1929587 (S.D.N.Y. May 10, 2017).

"[I]n this Circuit, a defendant must establish three elements to prevail on a laches defense: [i] that he lacked knowledge that the claim might be asserted against him; [ii] that the plaintiff delayed asserting the claim despite the opportunity to do so; and [iii] that he would be prejudiced if the claim were now allowed to go forward." *666 Drug, Inc.* v. *Tr. of 1199 SEIU Health Care Emps. Pension Fund,* No. 12 Civ. 1251 (PAE), 2013 WL 4042614, at *9 (S.D.N.Y. Aug. 8, 2013) (first alteration in original) (internal quotation marks omitted) (quoting *In re Gucci,* 197 F. App'x 58, 60 (2d Cir. 2006) (summary order)), *aff'd,* 571 F. App'x 51 (2d Cir. 2014) (summary order); *see also Rapf* v. *Suffolk Cty. of N.Y.,* 755 F.2d 282, 292 (2d Cir. 1985).

**B.     Analysis**

**1.     Plaintiffs' Breach-of-Contract Claims Are Time-Barred**

Plaintiffs argue that Defendant's statute-of-limitations defense is "superfluous to the loan agreements between the parties." (Pl. Br. 3). Plaintiffs explain that the loan agreements were "'indefinite' contracts running without a fixed end but containing unambiguous provisions under which the contract[s] would terminate." (*Id.* at 4). Thus, though the loans "did not provide a fixed termination date," they still were proper under New York Law because the obligation to which they gave rise was "condition[ed]" upon Defendant's repayment of each loan's principal and accrued interest, "an event which would

13

necessarily terminate [each] agreement." (Pl. Opp. 2). Here then, since repayment never occurred, "the loan agreements still have not terminated," and "the statute of limitations has not begun to run." (Pl. Reply 2). Rather, "the loans were automatically renewed each year," because Defendant "agreed to pay a higher default interest rate for an indefinite number of years" following the expiration of each loan's one-year term. (Pl. Br. 5).[7]

The Court cannot adopt Plaintiffs' position. To the extent that Plaintiffs' arguments implicate New York's continuing-wrong doctrine, the Court finds that Plaintiffs have not alleged a continuing wrong. Rather, Plaintiffs allege exactly what New York's continuing-wrong doctrine exempts from its coverage: a "single breach" of each loan agreement "with damages increasing as the breach continue[s]." *Henry*, 48 N.Y.S.3d at 70; *see also Kahn*, 970 F.2d at 1039. Under New York law, Defendant's alleged nonperformance "merely affects damages[,] and does not give rise to a new cause of action." *Kahn*, 970 F.2d at 1039.

Indeed, this is a classic case involving claims "for payment of a sum of money allegedly owed pursuant to a contract," in which, under New York law, there is no ambiguity regarding accrual. *Hahn Auto. Warehouse*, 18 N.Y.3d at 770. In such a case, the rule is plain: A "cause of action accrues when the [party making the claim] possesses a legal right to demand payment." *Id.*

---

[7] Though it does not do so expressly, to the extent that Plaintiffs' briefing might be construed to allege the existence of installment contracts requiring annual payments, that argument fails. The underlying agreements do not evidence any requirement that payments be made in annual installments, nor did Plaintiffs plead such a requirement in their Complaint. (See Compl.; Pl. Br., Ex. A).

14

(alteration in original) (internal quotation mark omitted) (quoting *Minskoff Grant Realty & Mgmt. Corp.*, 897 N.Y.S.2d at 487). In *Hahn,* New York's Court of Appeals explained that accrual could not be conditioned on a demand for payment, because such a rule would allow parties "to extend the statute of limitations indefinitely 'by simply failing to make a demand.'" *Id.* at 771 (quoting *Town of Brookhaven* v. *MIC Prop. & Cas. Ins. Corp.,* 668 N.Y.S.2d 37, 38 (2d Dep't 1997)).

The same reasoning holds here. These parties may have agreed in each of their contracts that each contract's terms would remain in effect pending full repayment of Plaintiffs' loans to Defendants. But accrual cannot be conditioned on repayment if New York's limitations provision is to have any meaning. Otherwise, Plaintiffs could "extend the statute of limitations indefinitely 'by simply failing to make a demand'" for repayment. *Hahn Auto. Warehouse,* 18 N.Y.3d at 771 (quoting *Town of Brookhaven,* 668 N.Y.S.2d at 38). Like the defendant in *Hahn,* Plaintiffs here have acknowledged that they had a right to demand repayment more than six years before they initiated this action, which right they failed to exercise. (*See, e.g.,* Dkt. #17). Thus, as the *Hahn* court found, so too must this Court find that the statute of limitations was not tolled by Plaintiffs' inaction.

The statute of limitations with regard to Plaintiffs' breach-of-contract claims accrued upon Defendant's initial breach, when Defendant failed to repay each loan at the expiration of its roughly one-year term. (*See* Compl.; Pl. Br., Ex. A; Dkt. #17). At latest therefore, Plaintiffs' claims accrued in April of 2006.

(*See* Compl.; Pl. Br., Ex. A; Dkt. #17). Any action for breach of contract was required to be filed within six years of this accrual date, *viz.*, on or before April of 2012. *See Muto*, 668 F.3d at 57 (citing N.Y. C.P.L.R. § 213(2)). Plaintiffs' breach-of-contract claims, brought in November 2015, were untimely as a matter of law.[8]

### 2. Plaintiffs' Explanation of Their Untimely Filing Raises a Genuine Dispute of Material Fact

However, the Court cannot determine that this untimeliness is an absolute bar to Plaintiffs' prosecution of this action. Plaintiffs have invoked the doctrine of equitable estoppel to defeat Defendant's statute-of-limitations defense, and thereby raised a dispute of material fact.

Plaintiffs argue that Defendant should be equitably estopped from raising its statute-of-limitations and laches defenses because Plaintiffs' delay in prosecuting this action was caused entirely by Defendant's deception: "At every step of the way[,] the [D]efendant thwarted the [Plaintiffs'] attempts to be repaid." (Pl. Reply 3; *see also* Dkt. #17). Plaintiffs allege Defendant "did this by hiding, changing its address, and even changing its company name and industry." (Pl. Reply 3). Additionally, "[o]n numerous occasions including in or around September 2007, February 2009, February and November of 2010[,]

---

[8]  Plaintiffs build their arguments around *Nicholas Laboratories Limited* v. *Almay, Inc.*, 723 F. Supp. 1015 (S.D.N.Y. 1989), which the Court notes as a preliminary matter is a nearly 30-year-old case that is not binding on the Court. Moreover, the focus of *Nicholas* is the interpretation of a contractual provision far more complex than any at issue here. And the question presented in *Nicholas* was when the parties' contract *terminated*. Here, the Court accepts that the parties' contracts may not *terminate* until Defendant fully repays its debts to Plaintiffs. But this does not change the fact that Plaintiffs' claims *accrued* upon Defendant's default, when Plaintiffs had a right to demand repayment. Thus, *Nicholas* is neither persuasive nor dispositive in this case.

16

and March 2011, Jeffrey Rinde, counsel who drafted the loan documents, told the plaintiffs that the defendant was out of business." (Lowy Aff. ¶ 13; *see also* Pl. Reply 3). Defendant "even delisted from the public markets." (Pl. Reply 3). Thus, Plaintiffs' "numerous attempts over the years to contact the defendant ... were unsuccessful." (Lowy Aff. ¶ 13). Plaintiffs indicate that they brought the instant case in November 2015, "after finally having located [Defendant] when its company name change went public." (Pl. Reply 4).

Defendant offers a different account. Defendant indicates that it did not thwart Plaintiffs' attempts to be repaid, but rather paid Plaintiffs when Defendant "aggregated all of its debt into a convertible promissory note on or about April 14, 2007[,] with PDB Irrevocable Trust, who compensated constituent debt holders" including Plaintiffs. (Gotshalk Aff. ¶ 3). Specifically, "Plaintiffs were compensated by the issuance of certificate numbers 1068 and 1069." (*Id.* at ¶ 4).

In part to explain its lack of documentary evidence of this assignment, Defendant also invokes the doctrine of laches. (Def. Opp. 7-8). Defendant argues that because Plaintiffs "delayed [nine-and-one-half] years to enforce their rights," Defendant is prejudiced in its ability to properly defend itself against Plaintiffs' claims. (*Id.*). Specifically, because Defendant's auditor has gone out of business, Defendant has been unable to locate records to support properly defenses such as accord and satisfaction and a lack of privity. (*Id.*).

This dispute over the cause of Plaintiffs' delayed enforcement of their rights is a dispute of material fact that precludes summary judgment.

17

Plaintiffs claim that the delay was caused by Defendant's deception. Defendant indicates that the delay was caused by Defendant's assignment and repayment of the contracts. Both sides offer only sparse testimonial evidence to support their accounts. Even after the Court requested additional evidence in its June 19 Order (Dkt. #39), the parties failed to provide any.

The Court is therefore skeptical that Plaintiffs ultimately will be able to prove that they are entitled to equitable tolling, or that Defendant ultimately will be able to prove that it already repaid Plaintiffs' loans. But at this stage, the Court cannot determine as a matter of law whether Plaintiffs' untimely breach-of-contract claims are saved by the doctrine of equitable estoppel, or precluded because Defendant already discharged its obligations under the parties' contracts. Therefore, the Court must deny the parties' cross-motions for summary judgment. *See* Fed. R. Civ. P. 56(a); *see also id.* at 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may ... defer considering the motion or deny it[.]").

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED, and Plaintiffs' motion for summary judgment is DENIED. Inasmuch as the parties did not introduce any additional documentation in response to the Court's June 19 Order, the Court understands that there is no additional evidence in this case, and that discovery is not needed. For this reason, the parties are directed to appear on **August 1, 2017, at 11:00 a.m.** in Room 618

of the Thurgood Marshall United States Courthouse in order to set a schedule for trial. If, however, the parties believe that discovery is appropriate, they must submit a joint letter to the Court on or before **July 24, 2017**, explaining what discovery is needed and proposing a schedule for same. The Clerk of Court is directed to terminate the motions pending at Docket Entries 29 and 31.

SO ORDERED.

Dated: July 13, 2017
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge